People v Baigorria (2025 NY Slip Op 51837(U))

[*1]

People v Baigorria

2025 NY Slip Op 51837(U)

Decided on November 19, 2025

Criminal Court Of The City Of New York, New York County

Shamahs, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 19, 2025
Criminal Court of the City of New York, New York County

The People of the State of New York, Plaintiff,

against
Marco Baigorria, Defendant.

CR-018498-25NY

For Defendant: Kevin E. Morgan, Esq. 
For the People: Alvin Bragg, New York County District Attorney's Office (ADA Ellery Harvey Esq. of Counsel) 

Elizabeth Y. Shamahs, J.

On June 7, 2025, at approximately 4:50 AM, at 118 East 37th Street, New York, New York, Lieutenant Joseph Cortes assigned to the 17th Precinct of the New York City Police Department (NYPD) responded to a 911 call stating that defendant, Marco Baigorria, had been in a vehicle collision. When he arrived on scene, he observed defendant and defendant's wife, the 911 caller, standing outside of a crashed Subaru automobile. Defendant had watery eyes and explained that he had been drinking and that he got into his car to go home before he crashed into several parked cars. Defendant was removed to Bellevue Hospital for injuries from the collision, where Police Officer Ryan Barber of the NYPD's Highway Unit 1 administered a portable breath test and defendant blew a .16. Defendant subsequently consented to a blood draw, which was sent to the Office of the Chief Medical Examiner (OCME) for testing. Defendant's toxicology report determined a blood alcohol content of .17.
For these acts, defendant was subsequently charged and arraigned in Criminal Court with two counts of operating a motor vehicle while under the influence of alcohol Vehicle and Traffic Law (VTL) §§ 1192 (1), (3).
On September 5, 2025, the People filed a Certificate of Compliance (COR) and Statement of Readiness (SOR) with defense counsel and the court after completing their discovery obligations. The disclosures consisted of NYPD arrest related paperwork, law enforcement witness paperwork, laboratory result paperwork, DA Office paperwork, 911 calls, radio runs, body-worn camera videos, and miscellaneous items.
On September 15, 2025, defense counsel notified the People that calibration and maintenance reports related to the portable breath test (PBT) were missing from the People's disclosures. On September 16, 2025, the People disclosed those records, filing a Supplemental [*2]Certificate of Compliance (SCOC) and SOR with defense counsel and the court to reflect those disclosures.
Now, in papers dated September 16, 2025, defendant, through counsel, moves this Court for an Order granting the following: dismissal of the accusatory instrument on the ground that it is facially insufficient to support the charges, invalidation of the People's COC and dismissal on speedy trial grounds, preclusion of identification evidence, the suppression of evidence, preclusion of defendant's prior bad acts, and any other relief that the Court deem just and proper. The People oppose in response papers dated October 15, 2025. Defendant filed a reply on November 5, 2025.
Upon review of the parties' submissions and annexed exhibits therein along with the court file and minutes, the Court's Decision and Order is as follows.
MOTION TO DISMISS FOR FACIAL INSUFFICIENCY
Defendant moves this Court to dismiss the accusatory instrument on the ground that it is facially insufficient to support the charges. In support of this claim, he argues that the information fails to demonstrate that defendant was driving in an intoxicated condition, as the information only alleges that defendant was observed with watery eyes, standing next to a vehicle that had been in a collision, and stated that he had had been drinking and driving. He points out that the information does not allege any odor of alcohol emanating from clothes or breath and likewise does not allege that defendant was unsteady on his feet or unable to walk in a straight line and does not allege any slurring or impediment of speech. Furthermore, he argues that the Blood Alcohol Content (BAC) alleged in the information cannot be used to support the count of VTL § 1192 (3), on the ground that common law intoxication is based on personal observation alone. Finally, defendant argues that defendant's admission lacks corroboration under Criminal Procedure Law (CPL) § 60.50.
The People oppose, arguing that the information is facially sufficient as the People have properly established a prima facie case for Driving While Intoxicated (DWI), namely that under VTL §§ 1192 (1) and (3), that defendant was operating a motor vehicle while in an intoxicated condition based on defendant's admission, the crashed vehicle, defendant's watery eyes, and his BAC. The People also argue that, contrary to defendant's claim, defendant's intoxication can be proven by his BAC.
An information is jurisdictionally sufficient where it states facts of an evidentiary character supporting the charges (CPL § 100.15[3]), and the factual allegations, together with any supporting depositions, provide "reasonable cause to believe that the defendant committed the offense charged." CPL § 100.40(1)(b). In order for the reasonable cause standard to be met, the factual allegations in the instrument must be sufficient to show that it is reasonably likely that a crime was committed, and that the defendant committed it. People v Hightower, 18 NY3d 249, 254 (2011).
In addition, the information and supporting depositions must include "[n]on-hearsay allegations" that "establish, if true, every element of the offense charged and the defendant's commission thereof." CPL § 100.40(1)(c); People v Casey, 95 NY2d 354, 360 (2000). This is referred to as the "prima facie case requirement." People v Kalin, 12 NY3d 225, 229 (2009) (citations omitted). The prima facie case requirement in an accusatory instrument "is not the same as the burden of proof beyond a reasonable doubt required at trial, nor does it rise to the level of legally sufficient evidence that is necessary to survive a motion to dismiss based on the proof presented at trial." People v Smalls, 26 NY3d 1064, 1066 (2015) (citations omitted). The [*3]Court of Appeals has repeatedly emphasized, "[s]o long as the factual allegations of an information give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading." Casey, 95 NY2d at 360; see also People v Berrezueta, 31 NY3d 1091, 1092 (2018); Smalls, 26 NY.3d at 1066; People v Dreyden, 15 NY3d 100 (2010); Kalin, 12 NY3d at 230; People v Konieczny, 2 NY3d 569, 576 (2004).
Finally, in evaluating the adequacy of an accusatory instrument, a reviewing court must do so in the light most favorable to the People, and should consider not only the facts expressly alleged, but also the reasonable inferences and obvious implications that can be drawn from those allegations. See People v Drelich, 32 NY3d 1032 (2018); People v Jackson, 18 NY3d 738, 747 (2012); Casey, 95 NY2d at 360.
In this case, defendant is charged with Driving While Intoxicated (VTL § 1192[3]) and Driving While Ability Impaired (VTL § 1192[1] ). VTL § 1192(1) provides, "No person shall operate a motor vehicle while the person's ability to operate such motor vehicle is impaired by the consumption of alcohol." A person is "impaired" by "the consumption of alcohol when that person's consumption of alcohol has actually impaired, to any extent, the physical and mental abilities which such person is expected to possess in order to operate a vehicle as a reasonable and prudent driver." CJI2d (NY) Vehicle & Traffic Law § 1192[1], citing People v Cruz, 48 NY2d 419, 427 (1979).
VTL § 1192(3) prohibits operation of a motor vehicle while in an "intoxicated condition." A person is "intoxicated" when "such person has consumed alcohol to the extent that he or she is incapable, to a substantial extent, of employing the physical and mental abilities which he or she is expected to possess in order to operate a vehicle as a reasonable and prudent driver" (CJI2d [NY] Vehicle & Traffic Law § 1192[1], citing People v Ardilla, 85 NY2d 846 (1995); see also Cruz, 48 NY2d at 427). Notably, a jury may consider factors including defendant's physical condition and appearance, the presence or absence of alcohol, the manner in which defendant operated a motor vehicle, opinion testimony regarding defendant's sobriety, the circumstances of any accident, and the results of any test of the content of alcohol in defendant's blood. See CJI2d[NY] Vehicle and Traffic Law § 1192(3). Finally, VTL § 1192(7) provides, "[t]he provisions of this section shall apply upon public highways, private roads open to motor vehicle traffic and any other parking lot."
Thus, the common elements that are required for conversion of VTL §§ 1192 (1) and (3) offenses are: (1) operation of a vehicle, (2) on a public road as defined in VTL § 1192(7), in either (3) an intoxicated or impaired condition.
In this case, the information specifically states that on June 7, 2025, at about 4:50 AM, at 118 E 37th Street, New York, New York:
I am informed by Lt. Joseph Cortes of the 17th precinct, that he observed the defendant standing outside a crashed Subaru Outback Wagon with the license plate JMZ6459 at the above location. I am further informed by Cortes that he observed the defendant had watery eyes. I am further informed by Cortes that the defendant stated in substance to him, "I had a few drinks and then I got behind the wheel".
I observed Officer Ryan Barber shield #23971, of the Highway Unit 1, administer a portable breath test. The defendant's blood alcohol was 0.161. I further observed the defendant consent to having his blood drawn.
I reviewed a toxicology report generated by the Forensic Toxicology Laboratory of The City of New York Office of Chief Medical Examiner. I observed that the defendant's recorded blood alcohol level was 0.179.
The People have filed and served a supporting deposition executed by Lieutenant Cortes and an OCME forensic toxicology report.
Here, these allegations, if true, sufficiently demonstrate that defendant was drinking and then got behind the wheel, resulting in a crashed vehicle, with a BAC of .17. These allegations also sufficiently establish that defendant was, therefore, incapable, of employing the physical and mental capabilities expected from a prudent and reasonable driver. And contrary to defendant's contention, as noted above, the People may present, and the jury may consider, a defendant's BAC from any test result in assessing whether defendant was intoxicated. Thus, "given a fair and not overly restrictive or technical reading" (Casey, 95 NY2d at 360), the allegations are sufficient for pleading purposes to establish reasonable cause to believe and a prima facie case that defendant committed each element of the crimes of VTL §§ 1192 (1) and (3). And by "stat[ing] the time, date, and location of the[] events," the information was "sufficient to prevent defendant from facing double jeopardy on the same charges." People v Dumay, 23 NY3d 518, 519 (2014).
Finally, defendant's contention that his admission cannot be considered in the information as it lacks requisite corroboration under CPL § 60.50, which provides that "a person may not be convicted of any offense solely upon evidence of a confession or admission made by him without additional proof that the offense charged has been committed," fails and is denied. It is well established that the People need not provide corroboration of a defendant's admission for a criminal court information to be legally valid. People v Suber, 19 NY3d 247 (2012). The Court of Appeals, in so ruling, noted that the statute, by its terms, precludes only a conviction based on such evidence, and that while an indictment must be supported by competent corroborative evidence, an information may be supported by other types of evidence. Moreover, specific references to the corroboration rule are contained in the statutes governing indictments, but no such references are made in the statutes governing informations. In any event, assuming arguendo that corroboration was required at the pleading stage, defendant's admission is nevertheless corroborated by defendant's BAC and observations regarding his intoxicated appearance. Accordingly, the information sufficiently pleads a prima facie DWI case and defendant's motion is denied as meritless. Defendant's other contentions are also denied for the foregoing reasons.

 MOTION CHALLENGING THE CERTIFICATE OF COMPLIANCE
Defendant also moves this Court to deem the People's COC invalid, and its accompanying SOR illusory, on the basis that certain discoverable materials were belatedly disclosed. Specifically, defendant takes issue with PBT machine maintenance reports and calibration records disclosed after the filing of the COC, on September 16, 2025, one day after he alerted the People that it was missing. The People oppose, arguing that their COC, and subsequent SCOC, were valid, filed in good faith after exercising due diligence, and that the belated disclosures do not vitiate the validity of the initial COC. The People additionally argue that, as an initial matter, defendant's claims should be deemed waived, because defendant's motion does not comport with CPL § 245.50(4), as defendant failed to include an affirmation asserting that he timely made good faith efforts to confer with the People about the specific and [*4]particularized basis for challenging the People's COC before resorting to motion practice, and furthermore affirm that efforts to resolve discovery issues were unsuccessful and that no accommodation could be reached — as he must. CPL § 245.50(4).
As recently amended, effective August 7, 2025, article 245 of the Criminal Procedure Law requires the People to disclose to a defendant "material and information in the possession, custody or control of the prosecution or under the prosecution's direction and control," and provides a non-exhaustive list of materials subject to "automatic" disclosure. CPL § 245.20(1). Under CPL § 245.20(2), the People are required to "make a diligent, good faith effort to ascertain the existence of material or information discoverable under [CPL § 245.20(1)] and to cause such material or information to be made available for discovery where it exists but is not within the prosecutor's possession, custody or control." The People are not required, however, "to obtain material or information if it may be obtained with the use of a subpoena duces tecum where the defense is able to obtain the same material with the use of a subpoena duces tecum." CPL § 245.20(2).
The People must also certify their discovery compliance in writing by filing a COC. Importantly, the People may file their COC even if they have not yet disclosed all automatically discoverable items provided that they have "exercised due diligence and acted in good faith in making reasonable inquiries and efforts to obtain and provide the discovery required by [CPL § 245.20(1)]." CPL§ 245.50(1). The COC must "state that, after exercising due diligence and making reasonable inquiries and efforts to ascertain the existence of, obtain, and disclose material and information subject to discovery, the prosecution has disclosed and made available all known material and information it has obtained subject to discovery." CPL § 245.50(1). The COC must also identify "the items provided" and "the items that the prosecution is required to disclose and of which the prosecution is aware but has been unable to obtain despite the exercise of due diligence as evaluated under this section." CPL § 245.50(1). If the People provide additional discovery in connection with their ongoing obligations outlined in CPL § 245.60, they must file "a supplemental certificate" that "identif[ies] the additional material and information provided." CPL §245.50(1). A SCOC will not impact the validity of the original COC if filed in good faith and after exercising due diligence or when the additional discovery did not exist when the initial COC was filed. CPL §245.50(1-a).
Once the People file a COC, a defendant must notify the People of any potential deficiencies in the COC by making "good faith efforts to confer with the [prosecution] regarding the specific and particularized matters" regarding the allegedly missing discovery. Then, if "no accommodation can be reached," the defense may file a motion to invalidate the People's COC provided that: (1) they do so within thirty-five days of the service of the People's COC; and (2) they file an accompanying affirmation of conferral stating that the defense "conferred in good faith or timely made good faith efforts to confer with the [prosecution] regarding the specific and particularized matters forming the basis for such challenge, that efforts to obtain the missing discovery from the [prosecution] or otherwise resolve the issues raised were unsuccessful, and that no accommodation could be reached." CPL § 245.50(4)(b)-(c). Significantly, the statute further specifies that "the court may grant a remedy or sanction for a discovery violation as provided in [CPL § 245.80]." CPL § 245.50(1). Any such remedy or sanction must be "appropriate and proportionate to the prejudice suffered by the party entitled to disclosure." CPL §245.80(1).
To determine the validity of the People's COC, a reviewing court must assess the People's [*5]due diligence. As the Court of Appeals held in People v Bay, 41 NY3d 200 (2023), due diligence is a "flexible standard that requires the People to make reasonable efforts to comply with statutory directives." Bay, 41 NY3d at 211 (internal quotation marks omitted). "Reasonableness, then, is the touchstone—a concept confirmed by the statutory directive to make 'reasonable inquiries.'" Id. at 211-12. Moreover, the Court recognized that, "[a]lthough the relevant factors for assessing due diligence may vary from case to case, courts should generally consider, among other things:" (1) "the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements;" (2) "the volume of discovery provided and outstanding;" (3) "the complexity of the case;" (4) "how obvious any missing material would likely have been to a prosecutor exercising due diligence;" (5) "the explanation for any discovery lapse;" and (6) "the People's response when apprised of any missing discovery." Id. at 212. These six factors are now part of the statutory due-diligence analysis under CPL § 245.50(5)(a). This section also requires courts to consider whether: (1) "the belated discovery was substantively duplicative, insignificant, or easily remedied;" (2) "the omission was corrected;" (3) "the prosecution self-reported the error and took prompt remedial action without court intervention;" and (4) "whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial." CPL § 245.50(5)(a). A reviewing court must "look at the totality of the party's efforts to comply with the provisions of [article 245], rather than assess the party's efforts item by item." CPL § 245.50(5). The statute further directs that "[t]he court's determination shall be based on consideration of all factors listed in [CPL § 245.50(5)(a)] and no one factor shall be determinative." CPL § 245.50(5)(b).
Indeed, the Bay decision made clear that, in assessing the validity of a COC, the reviewing court should engage in a "holistic assessment of the People's efforts to comply with the automatic discovery provisions, rather than a strict item-by-item test that would require [a court] to conclude that a COC is improper if the People miss even one item of discovery." People v Cooperman, 225 AD3d 1216, 1220 (4th Dept 2024); see also People v Williams, 224 AD3d 998, 1006-07 (3d Dept 2024) (People's COC was valid even though three discoverable items had not been disclosed where People provided "extensive" discovery before filing COC, identified missing items when they filed the COC, and acknowledged their duty to provide missing items upon receipt). Notably, "[a]rticle 245 is not intended for use as a 'sword,' whereby [ADAs] are expected to run themselves ragged in at times futile or near-futile attempts to procure material in which defense counsel has no substantive interest beyond exhausting the People's statutory speedy trial time or hoping that the People, in frustration, opt to abandon the prosecution." People v Barrios, 82 Misc 3d 606, 613 (Crim Ct Bronx Co 2024); see also People v Thompson, 79 Misc 3d 1220(A), *2 (Crim Ct Kings Co 2023) (article 245 "does not require the impossible; it does not demand that every scrap of discoverable information be turned over before the People may file a [COC]") (internal quotation marks omitted).
Furthermore, certain delays or discovery issues should not invalidate a COC that was made in good faith, after the exercise of due diligence and efforts made by the prosecution to comply with statutory obligations. Bay at 210-213. If the delay is a result of oversights in the production of material, delayed discovery of the existence of certain items, a good faith position that the material in question was not discoverable, or voluminous files, the Bay decision clearly posits that a court should apply a "holistic assessment" of the efforts made by the People to comply with their discovery obligations when evaluating the validity of a COC. Id. Moreover, [*6]several courts have found that certain delays or discovery issues should not invalidate a COC that was made in good faith, after the exercise of due diligence, and where, for example, the delay was a result of oversights in the production of material, delayed discovery of the existence of certain items, voluminous discovery, non-existent items, or material unrelated to the case. People v Cano, 71 Misc 3d 728 (Sup Ct, Queens County 2020); People v Lustig, 68 Misc 3d 234 (Sup Ct, Queens County 2020) (Zayas, J)(court found the People's certificate of compliance to be valid, since it was clearly filed in good faith under CPL § 245.50(1) and, therefore, no adverse consequence to the prosecution should result from the fact that the certificate was filed prior to the disclosure of the database search results).
As an initial matter, this Court notes that, as the People point out, defendant's motion fails to strictly comport with the new statutory requirements under CPL § 245.50(4), which requires defense counsels to affirm, in a COC challenge, that they have attempted to confer with the People regarding outstanding discovery matters and that no accommodation could be reached before filing the instant challenge. Nevertheless, this Court still elects to entertain the motion, further noting that, at any rate, defense counsel affirms speaking with the prosecutor elsewhere throughout.
In any event, defendant's motion is without merit. After a thorough review of the moving papers, court file, COC, and supplemental COCs filed, the Court applied a "holistic assessment" of the People's efforts to comply with their discovery obligations, being mindful that perfection is not required. See Bay, 41 NY3d at 212. Here, the People's disclosures demonstrates that they initially disclosed numerous materials prior to certifying compliance. That disclosure included activity logs, BWC footage, arrest paperwork, driving while intoxicated paperwork, OCME toxicology records, law enforcement disclosures, 911 calls and more, demonstrating good faith and due diligence. The People's initial disclosures were extensive and substantial, especially in comparison to the belatedly disclosed materials, which was only the PBT machine maintenance and calibration records. After defense counsel requested additional discovery, the People were responsive to those requests to resolve any potential discovery lapses as they made various attempts to provide defense counsel with requested materials and did so, a mere one day after defense counsel requested it. Taken together, this demonstrates that the People's initial COC, and subsequent COCs/SCOCs, made in good faith and after exercising due diligence, were valid.
Moreover, this Court also finds that the inadvertent failure to disclose PBT machine maintenance and calibration records with the initial COC reasonable under the circumstances as the PBT records are arguably of minimal and/or insignificant importance because while recent courts have ruled that these results can be admitted when their reliability is established, it is also true the PBT results are generally inadmissible. See e.g., People v Owen, 75 Misc 3d 127(A) (App Term, 2d, 9th &10 Jud Dists 2022); People v Hernandez, 78 Misc 3d 768 (Crim Ct Bx Co 2023). That is especially true in a case such as this where the People are relying on defendant's blood draw and the subsequent toxicology testing to establish defendant's BAC at trial.
In any event, defendant nevertheless received the very material that he now claims as a defect, a mere one day after he requested it. And as initially outlined above, "belated disclosures should not invalidate a [COC] that was made in good faith after the exercise of due diligence where the delay resulted from, for example, minor oversights in the production of material, delayed discovery of the existence of certain items, or a good faith position that the material in question was not discoverable." People v Perez, 73 Misc 3d 171, 176 (Sup Ct Queens Co 2021). People ex rel. Nieves obo Taipe v McGinley-Liddie, 2024 WL 4660126 (2d Dept November 4, [*7]2024) (COC upheld where People disclosed additional materials after filing it); People v Pondexter, 76 Misc 3d 349, 356 (Crim Ct NY Co 2022) ("once alerted to the single missing document—which was of minimal importance—the People immediately sought and disclosed it and provided a reasonable explanation for its belated production"). Finally, defendant hasn't received "any evidence or information that he had not received or that he had received too late to use effectively." People v Elmore, 211 AD3d 1536 (4th Dept 2022) and is entirely unprejudiced as a result. Thus, defendant's motion is denied.
In sum, after a thorough review of the moving papers, court file, COC, and supplemental COCs filed, the Court applied a "holistic assessment" of the People's efforts to comply with the discovery. The People have demonstrated that they acted in good faith and exercised due diligence by describing the detailed actions they took to comply with discovery obligations and any belated discovery was immediately disclosed once they were alerted. The People also meaningfully addressed and delineated the items listed in the defendant's papers. For the aforementioned reasons, the Court finds that the People have in fact complied with their discovery obligations pursuant to CPL §245, and therefore, the COCs are valid. Accordingly, the defendant's motion to invalidate the People's COC filed is denied. Defendant's remaining contentions are denied as meritless.

IDENTIFICATION EVIDENCE
Defendant's motion for the preclusion of any unnoticed identification evidence that the People intend to offer at trial is denied. The People have not asserted that there are any unnoticed identifications.

PHYSICAL EVIDENCE
Defendant's motion to suppress physical evidence, namely chemical testing results, on the basis that it was illegally obtained from defendant absent probable cause is granted to the extent that a combined Dunaway/Mapp hearing is ordered.

STATEMENT EVIDENCE
Defendant's motion to suppress statements is granted to the extent that a Huntley hearing is ordered.

MOTION FOR PRECLUSION OF PRIOR BAD ACTS OR PRIOR CONVICTIONS
Defendant seeks the preclusion of using defendant's prior bad acts and/or prior convictions at trial pursuant to People v Molineux, 168 NY 264 (1901), People v Ventimiglia, 52 NY2d 350 (1981), and People v Sandoval, 34 NY2d 371 (1974) on the People's direct case or upon cross-examination.
Evidence of uncharged crimes is inadmissible where it is offered solely to raise an inference that a defendant has a criminal propensity. People v. Molineux, 168 NY 264 (1901); People v Wright, 288 AD2d 409 (2d Dept 2001). Such evidence may be admitted, however, if it helps to establish a defendant's motive, intent, identity, knowledge, common scheme or plan, lack of mistake or accident, to complete the narrative of the crime, or provide the jury with background information. See People v Molineux, 168 NY 264 (1901); People v Ventimiglia, 52 NY2d 350 (1981); People v Lewis, 69 NY2d 321 (1987); People v Allweiss, 48 NY2d 40 (1979); People v. Davis, 169 AD2d 774 (2d Dept 1991). In order to use this evidence, the People are required to notify the court and defendant, prior to jury selection, of their intent to introduce the evidence as part of the case-in-chief and identify the basis upon which they consider it admissible. People v Ventimiglia, 52 NY2d 350 (1981). Once a showing is made that the evidence is relevant, a trial court may admit the evidence as long as its probative value [*8]outweighs its potential prejudice. People v Hudy, 73 NY2d 40, 54-55 (1988); People v Alvino, 71 NY2d 233, 241-42 (1987). The permissible scope of such evidence rests largely, if not completely, with the trial court. See People v Hudy, 73 NY2d 40, 54-55 (1988). Accordingly, defendant's motion as to prior bad act evidence is deferred to the trial court.
Should he testify, defendant, like any other witness, places his credibility in issue. Although a witness may not be questioned about an arrest per se, it is a provident exercise of the Court's discretion to permit cross-examination concerning any immoral, vicious, dishonest and or criminal act, even if defendant was not formally charged with it. People v Sandoval, 34 NY2d 371, 373 (1974); People v Rockwell, 18 AD3d 969 (3d Dept 2005); People v Di Bella, 277 AD2d 699 (3d Dept 2000); People v Connolly, 259 AD2d 1039 (4d Dept 1999); People v Maiolo, 122 AD2d 586 (4d Dept 1986); Prince, Richardson on Evidence, 11th Ed., 6-406. A witness may also be impeached by instances of conduct demonstrating a "willingness ... to place his self-interest ahead of principle or the interests of society." People v. Walker, 83 NY2d 455, 461—462 (1994).
The People's disclosure obligation is governed by People v Sandoval, 34 NY2d 371 (1974), which directs the People to notify the defendant, prior to the commencement of jury selection, of the acts which they will seek to use for impeachment purposes. However, it is defendant who must demonstrate that the prejudicial effect of such evidence so far outweighs its probative worth that it must be excluded, as it is the defendant who bears the burden of persuasion. See People v Sandoval, 34 NY2d 371, 378 (1974). The permissible scope of such impeachment evidence rests largely, if not completely, with the trial court. People v Gray, 84 NY2d 709, 712 (1995); People v Walker, 83 NY2d 455, 459 (1994). Accordingly, defendant's motion as to prior convictions is therefore deferred to the trial court. People v Sandoval, 34 NY2d 371 (1974). 

RESERVATION OF RIGHTS
Defendant's application for an extension of time to file additional motions is denied subject to rights under CPL § 255.20(3) to move for further leave upon good cause shown.
The foregoing constitutes the Opinion, Decision, and Order of the Court.
Dated: November 19, 2025
New York, New York
ELIZABETH Y. SHAMAHS, J.C.C.